UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

EDDIE NAILOR,

       Defendant.
_____/

Case No. 23-20076

Honorable Sean F. Cox
United States District Court Judge

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS**

       In this criminal case, Defendant, Eddie Nailor ("Nailor"), is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Currently before the Court is Nailor's Motion to Suppress evidence that police officers seized a gun found in a car Nailor was driving during a traffic stop. (ECF No. 33). For the reasons set forth below, Nailor's Motion is **DENIED**.

**BACKGROUND**

       On February 7, 2023, a federal grand jury returned an indictment charging Nailor with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On May 24, 2023, Nailor filed the instant Motion to Suppress. (ECF No. 33).

       The parties briefed Nailor's Motion, and the Court scheduled an evidentiary hearing for July 14, 2023. Based on the parties' briefings, the Court believed no factual dispute existed, and

1

the parties only disagreed as to appropriate legal conclusions the Court should draw from the facts.

On July 14, before the hearing, this Court asked Defense Counsel why an evidentiary hearing was needed, as the parties' briefs appeared to rely on uniform facts. Defense Counsel insisted a hearing was necessary, so the Court proceeded. (7/14/23 Hr'g Tr.).

Having conducted an evidentiary hearing, the Court can now definitively state a hearing was unnecessary to resolve this matter.

A district court is required to hold an evidentiary hearing when a motion to suppress raises genuine issues of material fact. *See United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). As the Court suspected, the parties did not dispute the facts giving rise to Nailor's arrest, only the appropriate legal conclusions to be drawn from them. The evidentiary hearing for this case consisted of a recitation of the same undisputed facts presented by the parties in their briefs.

Nonetheless, the Court conducted an evidentiary hearing and bases its findings on the evidence presented.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The entire evidentiary hearing consisted of testimony from two witnesses called by the United States—Officers Cuso and Howard. Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law, for purposes of the pending motion.

## FINDINGS OF FACT

On the night of December 14, 2022, Police dispatch received a 911 call from an Assistant Manager of a Taco Bell in Washtenaw County. Based on the call, dispatch issued a "be on the lookout" ("BOL") alert to Washtenaw County Sheriff's Office Patrol units. The alert stated:

> [Unintelligible] a BOL for Township units in the area of the Taco Bell on Washtenaw. Caller just reported a male in the drive-thru in a silver Chevy Impala; Michigan plate of '4-Peter-Edward-David 72' [4PED72]. Apparently had a 121[1] on his lap and alcohol in his center console. He didn't point it at anyone. They just wanted to report it as—it happened approximately five minutes ago, last seen westbound on Washtenaw.

(Gov't Ex. 1A).

Approximately thirty minutes later, two Washtenaw County Sheriff's Officers—Officers Gombos and Cuso—identified a silver Chevy Impala with a "4PED72" license plate number. (*See* Gov't Ex. 2). The officers found the Impala near the 8700 block of MacArthur Street in the Sycamore Meadows Apartment Complex in nearby Scio Township. The officers initiated a traffic stop, and the driver of the Impala backed into a parking spot near 8850 MacArthur Boulevard. (*Id.*)

The two officers approached the vehicle and observed a male, later identified as Nailor, sitting in the driver's seat, and a passenger, later identified as Deja Burbank. (*See* Gov't Ex. 3).

Officer Gombos approached the driver's seat window and ordered Nailor and the passenger to exit the vehicle. They refused.[2] *Id.* Officer Gombos also asked Nailor and his passenger if there was a gun in the car. *Id.* Nailor denied having a gun. *Id.*

---

[1] Officers Cuso and Howard both testified that "121" is code for a gun. (7/14/23 Hr'g Tr.).
[2] A police officer may ask the driver of a vehicle to exit the vehicle that has been stopped for a traffic violation. *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977). The officer may also ask any passengers to exit a vehicle that has been stopped for a traffic violation. *Maryland v. Wilson,* 519 U.S. 408, 414–15 (1997).

3

Nailor and Officer Gombos argued for several minutes. While they argued, backup deputies, including Officer Howard, arrived. The backup officers surrounded the silver Impala and continued to order Nailor's passenger to exit the vehicle. (*See* Gov't Ex. 4). Eventually, Nailor's passenger complied.

As the passenger exited the car, Officer Howard shined his flashlight into the car's front passenger compartment. (Gov't Ex. 4). Officer Howard saw a gun protruding from underneath the passenger seat and said "Gombos gun.[3]" (*Id.*); (Gov't Ex. 7). At that time, Officer Gombos, who was still arguing with Nailor, removed Nailor from the driver's seat of the car. (Gov't Ex. 3). Nailor was then placed in custody.

Nailor now moves to suppress evidence of the stolen firearm, claiming he was the victim of an unconstitutional search and seizure that was not supported by reasonable suspicion. (ECF No. 33 ¶ 2).

## ANALYSIS & LEGAL CONCLUSIONS

Nailor claims he was victim of an unconstitutional search and seizure because his arresting officers did not have reasonable suspicion to stop him or to search his vehicle. (*See* ECF No. 33 ¶ 2). As the United States conceded at hearing, Nailor was the subject of a search and seizure. (7/14/23 Hr'g Tr.). The only question is whether that search and seizure was constitutional. The Court finds it was.

### I. Standard of Decision for a Motion to Suppress

Under Fed. R. Crim. P. 12(b)(3), a defendant may file a pretrial motion seeking, among other things, to suppress evidence that was obtained unlawfully. A defendant who files a motion

---

[3] The gun was so plainly visible that Officer Howard's body camera captured a clear image of the butt of the gun. (Gov't Ex. 7). The gun turned out to be a stolen Sig Saur 9mm loaded with 12 rounds of ammunition. (ECF No. 40 at 6).

4

to suppress bears the burden of proving that the challenged search or seizure violated his Fourth Amendment rights. *United States v. Graham-Jones*, 585 F. Supp. 3d 1009, 1011 (E.D. Mich. 2021). The Government, on the other hand, has the burden of proof to justify a warrantless search. *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

II. **The Officers Did *Not* Violate Nailor's Rights When Stopping Him**

It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). If an officer has probable cause to believe a traffic violation occurred, the officer's motivation for conducting the stop is not relevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Further, officers are permitted to conduct limited investigatory stops, known as *Terry* stops, when they have reasonable suspicion that a suspect is engaged in a crime. *Terry v. Ohio*, 392 U.S. 1 (1968).[4]

"[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675–76, 145 L. Ed. 2d 570 (2000). Still, the Fourth Amendment requires at least a minimal level of objective justification for making a stop. *Id*. An officer may not rely on a mere "hunch." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

When making reasonable-suspicion determinations, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273 (2002).

---

[4] The *Terry* doctrine applies to investigative stops of moving automobiles. *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000)

5

So, the Court must determine if, under the totality of the circumstances, Officers Gombos and Cuso had a "particularized and objective basis" for suspecting legal wrongdoing when they stopped Nailor. If they did, the stop was permissible.

The Taco Bell Manager's 911 call, and the corresponding BOL alert, supplied the officers with a sufficient objective reason to stop Nailor. The call suggested that Nailor was actively committing two crimes. First, the Manager reported Nailor had alcohol on his person. (Gov't Ex. 1A). Drinking and driving is obviously a crime in Michigan.

Second, the manager reported Nailor had a gun. Contrary to Nailor's position (*See* ECF No. 33 at 5), possession of a gun is presumptively illegal in Michigan. Mich. Comp. L. § 750.227(2) makes it unlawful to carry a concealed pistol on one's person or in one's car without a license. The Michigan Supreme Court has further stated that "lack of a license is not an element" of the felony offense for carrying a concealed weapon under § 750.227(2). *People v. Henderson*, 391 Mich. 612 (1974).

In other words, "upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, [a] prima facie case of violation of the statute has been made out." *Henderson*, 391 Mich. at 616.

Nailor claims the Taco Bell Manager's 911 call was insufficient to support reasonable suspicion of the crimes discussed above, and that the officers pulled Nailor over on a "hunch." (ECF No. 33 at 5).

Nailor offered no caselaw to support this argument, and his position is incorrect. The Sixth Circuit has found similar 911 calls sufficient to establish reasonable suspicion *and* probable cause for the seizure of a driver and warrantless search of his vehicle. *See United States v. Pasquarille*, 20 F.3d 682, 687 (6th Cir. 1994*)* (holding an officer had probable cause to search

a vehicle for drugs based on a tip from a 911 caller that "an individual was attempting to sell drugs at a nearby truck stop on Interstate 24, the vehicle in the attempted sale involved was a light-colored van with a step top, and the vehicle bore a Florida license plate ending with the characters "91E").

In sum, the Taco Bell Manager's 911 call, and the corresponding BOL alert, gave Officers Gombos and Cuso reasonable suspicion that Nailor was violating Michigan's drinking and driving laws and Mich. Comp. L. § 750.227.

### III. The Warrantless Search and Seizure of the Gun did *Not* Violate Nailor's Rights

The officers also did not violate Nailor's rights when they searched the silver Impala without a warrant. The Fourth Amendment generally requires that police officers obtain a warrant prior to conducting a search. *Maryland v. Dyson,* 527 U.S. 465, 466 (1999). Two exceptions to this requirement are for searches of vehicles, *id.* (citing *Carroll v. United States,* 267 U.S. 132, 153 (1925)), and for objects in plain view, *Minnesota v. Dickerson,* 508 U.S. 366, 375 (1993).

Under the plain view doctrine, an officer may seize evidence without warrant if the officer: (1) is lawfully present; (2) sees an object and its incriminating character is immediately apparent; (3) sees the item in plain view; and (4) has a lawful right of access to the object. *United States v. Herndon,* 501 F.3d 683, 692 (6th Cir. 2007) (quoting *Dickerson,* 508 U.S. at 375) (quotation marks omitted).

Nailor argues the plain view exception should not apply because the officers did not satisfy element two. He claims that, if an officer saw a gun in plain view, it would not create reasonable suspicion because having a gun, "unlike illegal drugs or other contraband, is not necessarily criminal." (ECF No. 33 at 5). In Nailor's view, seeing a gun would only create

7

reasonable suspicion if officers had "additional indicia that something criminal was happening." *Id*.

In support of his argument, Nailor cites, *United States v. Thompson*, 553 F. Supp. 3d 429 (N.D. Ohio 2021), *reconsideration denied*, 580 F. Supp. 3d 503 (N.D. Ohio 2022). In *Thompson*, a police officer entered a civilian's home pursuant to a valid arrest warrant. *Id*. at 432. The officer saw a shotgun, in plain view, and seized it under the plain view exception. *Id*.

The officer suspected the gun was stolen, so he called the Detective Bureau with the gun's serial number. The Bureau told the officer the gun was not stolen, but the civilian had prior felony convictions. *Id*. The civilian was then charged with being a felon in possession of a firearm. *Id*.

The court held the officer's seizure of the shotgun was unconstitutional because the officer had to undergo additional investigation before determining the civilian illegally possessed the shotgun. *Id*. at 433. In other words, it was not immediately apparent that possessing the shotgun was illegal—the gun itself did not confirm criminality.

*Thompson* is not applicable here because of the framework of Michigan gun control laws. In Michigan, as discussed above, there is a presumption of illegality whenever an officer discovers a concealed firearm. *See Henderson*, 391 Mich. at 616; Mich. Comp. L. § 750.227(2).

Therefore, unlike the officer in *Thompson*, Officer Howard did not need additional information to determine the gun in the silver Impala was illegal. It was readily apparent the gun was illegal because all guns in Michigan are presumed illegal. *See United States v. Galaviz*, 645 F.3d 347, 364 (6th Cir. 2011) (Merritt, J., concurring) (citing *Henderson* and stating, "[w]here the police have a 'prima facie case' concerning the violation of [Mich. Comp. L. § 750.227]

8

when they see a pistol in a car, we cannot say that the criminality of a pistol seen in a car is not "immediately apparent").

Contrary to Nailor's position, the plain view doctrine applies here. As discussed above: (1) the Officers Gombos and Cuso were lawfully present—they were responding to a BOL regarding potential drinking and driving and illegal gun possession; (2) & (3) When Nailor's passenger exited the vehicle, pursuant to a legal command by a backup officer, Officer Howard immediately saw the butt of a gun in plain view, which is presumptively illegal in Michigan; and (4) the officers had lawful right of access to the gun. *See Michigan v. Long,* 463 U.S. 1032, 1052 (1983) (officers may perform a protective search for weapons, as far as the passenger compartment, when there is reasonable suspicion occupants might be armed and dangerous.); *See also United States v. Galaviz*, 645 F.3d 347, 357 (6th Cir. 2011) (holding a visible gun in the back seat of a parked car gave officers "lawful right of access" to seize the gun under both the plain view exception and the vehicle exception). The officers did not violate Nailor's rights when they seized his firearm.

## CONCLUSION

**IT IS SO ORDERED** that Nailor's Motion to Suppress is **DENIED**. The Taco Bell Manager's 911 call, and the corresponding BOL alert, provided an objectively reasonable justification for Officers Gombos and Cuso to stop Nailor's car. Once Nailor was stopped, the officers were further permitted to seize, without warrant, the firearm they saw sticking out from under the passenger seat pursuant to the plain view exception.

**IT IS SO ORDERED.**

Dated: July 24, 2023            s/Sean F. Cox
                                                  Sean F. Cox
                                                  U. S. District Judge