UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

EDDIE NAILOR,

       Defendant.
_____/

Case No. 23-20076

Honorable Sean F. Cox
United States District Court Judge

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

In this criminal case, Defendant, Eddie Nailor ("Nailor"), is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Currently before the Court is Nailor's Motion to Dismiss. (ECF No. 50). The Motion has been fully briefed and the Court heard argument on August 16, 2023. Following the hearing, the Government filed a Supplemental Response to Defendant's Motion to Dismiss on August 23, 2023. (ECF No. 57). Defendant filed his reply to the Government's Supplemental Response on August 30, 2023. (ECF No. 58). For the reasons set forth below, Nailor's Motion is **DENIED**. 18 U.S.C. § 922(g)(1) is constitutional both facially and as applied to Nailor.

**BACKGROUND**

On February 7, 2023, a federal grand jury returned an indictment charging Nailor with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The facts giving rise to Nailor's arrest are outlined in a criminal complaint. (ECF No. 1).

1

On December 14, 2022, at approximately 10:51 p.m., an Assistant Manager at a Taco Bell at 2995 Washtenaw Avenue in Ypsilanti, MI called 911. (ECF No. 1 ¶ 6). The Manager reported that one of his employees gave free drinks to a customer at the drive through window. *Id*. The Manager's employee told the Manager that she offered the man free drinks to get rid of him because he was holding a pistol in one hand and alcohol in the other. *Id*. The Manager further reported the man was driving a silver Chevy Impala with license plate number "4PED72." *Id*.

Police dispatch then issued a "be on the lookout" ("BOLO") alert advising Washtenaw County Sheriff's Office Patrol to look for a silver Chevy Impala with a license plate of "4PED72" being driven by a male who had a firearm in the vehicle. (ECF No. 1 ¶ 7). The dispatcher broadcasted that the caller had informed them that the male had a firearm in his "lap" and alcohol in the center console of his vehicle, and that the vehicle was last seen near the Taco Bell on Washtenaw Avenue. *Id.*

At approximately 11:37 p.m., two Washtenaw County Sheriff's Officers—Officers Gombos and Cuso—identified a silver Chevy Impala with a "4PED72" license plate number. The officers initiated a traffic stop near the address of 88XX Macarthur Boulevard, Superior Township, MI 48198, which is located inside an apartment complex. (ECF No. 1 ¶ 8).

Once the stop was initiated, Officer Gombos approached the driver's side of the vehicle. (ECF No. 1 ¶ 9, 10). He saw a driver, later identified as Nailor, and a passenger, later identified as Deja Burbank ("Burbank"). *Id.* Officer Gombos introduced himself to the occupants of the vehicle and told them the purpose of the stop by explaining that the Washtenaw County Sherriff's Office had received a call from a person who worked at the Taco Bell about a man with a gun in his "lap". (ECF No. 1 ¶ 9).

Officer Gombos asked Nailor if he had a gun with him and Nailor stated he did not. *Id.* The officers ordered Nailor and Burbank to exit the vehicle, but they refused.[1] (ECF No. 33 ¶ 9, 10); (ECF No. 40 at 5). Nailor and Burbank also refused to provide identification to the Officers when asked. (ECF No. 1 ¶ 9, 10).

Nailor and Officer Gombos argued for several minutes. *Id.* While they argued, backup deputies, including Officer Howard, arrived. (ECF No. 1 ¶ 10). The backup officers surrounded the silver Impala and continued to order Burbank to exit the vehicle. *Id.* Eventually, Burbank complied. *Id*.

As Burbank exited the car, Officer Howard shined his flashlight into the front passenger compartment. (ECF No. 1 ¶ 10). He saw a gun protruding from underneath the passenger seat and yelled "gun."[2] *Id.* Officer Gombos then removed Nailor from the driver's seat of the car. *Id.* Both Nailor and Burbank were then placed in custody. (ECF No. 1 ¶ 11).

On May 24, 2023, Nailor moved to suppress evidence of the gun, claiming he was the victim of an unconstitutional search and seizure. (ECF No. 33 ¶ 2). The Court denied Nailor's Motion in an Opinion and Order dated July 24, 2023. (ECF No. 51). Nailor now moves to dismiss his indictment, claiming 18 U.S.C. § 922(g)(1), as applied to him, violates the Second Amendment. (ECF No. 50 at 9).

**STANDARD OF DECISION**

A defendant may challenge a defect in an indictment, including its constitutionality, via a pretrial motion to dismiss, provided "the basis of the motion is then reasonably available, and the

---

[1] A police officer may ask the driver of a vehicle to exit the vehicle when stopped for a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). The officer may also ask any passengers to exit a vehicle that has been stopped for a traffic violation. *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997).
[2] Officer Howard's body camera captured a clear image of the gun in plain view. (*See* ECF No. 40 at 7).

motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(B). A defendant may challenge the constitutionality of a statute facially or as applied.

A statute is facially unconstitutional if it is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). In contrast, an as applied challenge alleges the statute in question is unconstitutional as applied to the defendant's alleged conduct. *Carroll v. City of Cleveland*, 522 Fed. App'x 299, 306 (6th Cir. 2013).

When ruling on a motion to dismiss an indictment, the Court accepts the factual allegations therein as true, and determines only whether the indictment is valid on its face. *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

## ANALYSIS

Nailor claims his indictment should be dismissed because "[a] total prohibition on firearm possession by felons presumptively violates the Second Amendment…." (ECF No. 50 at 9). In his Reply Brief, Nailor clarifies he brings an as applied challenge to § 922(g)(1). (ECF No. 55 at 3). As applied to Nailor, § 922(g)(1) is constitutional.

### 1. *Bruen's* Impact on Second Amendment Application

The basis for Nailor's claim is the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). (*See* ECF No. 50 at 1-2). *Bruen* announced a new standard for courts to apply where "the Second Amendment's plain text covers an individual's conduct…." *Id*. at 2129-30.

The standard announced in *Bruen* has no impact on Nailor's indictment or § 922(g)(1). To explain why, the Court will start by discussing *Bruen's* predecessor—*D.C. v. Heller*, 554 U.S. 570 (2008). In *Heller*, the Supreme Court was faced with a Second Amendment Challenge

4

to a District of Columbia law that required residents to keep lawfully owned firearms "unloaded and dissembled or bound by a trigger lock or similar device." *Id*. at 575.

As part of its analysis, the Court conducted a thorough examination of the text and history behind the Second Amendment to discern its true meaning. *See id*. at 576-622. Ultimately, the Court concluded the Second Amendment guarantees "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 592, 622, 635.

However, in dicta, the Court qualified the scope of the Second Amendment by stating, "[l]ike most rights, the right secured by the Second Amendment is not unlimited…. nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…." *Heller*, 554 U.S. at 626.

Based on *Heller*, the Courts of Appeals developed a "'two-step' framework for analyzing challenges that combines history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125.

Step one followed the Supreme Court's analysis in *Heller*. In step one, based on the history and text of the Second Amendment, "the government may justify its regulation by 'establishing that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Id*. at 2126.

If the government proved that the regulated activity falls outside the Second Amendment's original scope, then the regulated activity is categorically unprotected, and the analysis ends. *Id*. "But if the historical evidence at this step is 'inconclusive or suggests that the regulated activity is *not* categorically unprotected, the courts generally proceed to step two." *Id*.

At the second step, courts would determine "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id*. If a core Second Amendment right is burdened, then courts would apply strict scrutiny to the regulation. *Id*. If a

core right was not burdened, courts would apply intermediate, means-end scrutiny. That is, a court would consider whether the government can show the regulation is "substantially related to the achievement of an important governmental interest." *Id*.

Then came *Bruen*. In *Bruen*, law-abiding citizens challenged the state of New York's concealed permitting process, claiming it violated their Second Amendment rights. *Bruen*, 142 S. Ct. at 2117.

Before addressing the merits of the challenge, the Court addressed the Courts of Appeals' two-step framework. The Court held that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. However, the Court held that step two was inappropriate because, under *Heller*, the Second Amendment does not support applying means-end scrutiny. *Id*. Therefore, the Court condensed the Courts of Appeals' two-step process into one step focused on the text and history of the Second Amendment.

Under *Bruen*, "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The Government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129-30. In other words, courts must first determine whether an individual's conduct is covered by the text of the Second Amendment. If it is not, the analysis ends. If it is, the Government must prove the regulation comports with this "Nation's historical tradition of firearm regulation." *Id.*

### 2.   § 922(g)(1) is Presumptively Lawful

Although *Bruen* altered the analytical framework for addressing Second Amendment challenges, it did not alter *Heller's* statement that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful." 554 U.S. at 626, 627 n.26.[3]

In concurring and dissenting opinions, Justices Alito Kavanaugh, Roberts, Breyer, Sotomayor, and Kagan, affirmed as much. *See Bruen*, 142 S. Ct. at 2157 (2022) (Alito, J., concurring) ("[o]ur holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun…. Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *See also, Bruen*, 142 S. Ct. at 2162 (Kavanaugh J., joined by Roberts J., concurring) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…."); *Bruen*, 142 S. Ct. at 2189 (2022) (Breyer J., joined by Sotomayor J., and Kagan J., dissenting) (stating he is aware that *Bruen's* holding has no impact on *Heller*'s finding that banning felons from owning firearms is presumptively lawful).

The Court finds additional support for its approach in the Eight Circuit, where a panel upheld the constitutionality of § 922(g)(1).[4] In *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), the Eighth Circuit concluded that, considering the Supreme Court's assurances in *Heller* and *McDonald*, felon-in-possession bans are presumptively lawful, and "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."

---

[3] It is unimportant that the statements in *Heller* are dicta. In the Sixth Circuit, "[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015).
[4] The Sixth Circuit has not addressed the constitutionality 18 U.S.C. § 922(g)(1) post-*Bruen*.

7

Lastly, the Court notes not all Circuits have followed this approach. In *Range v. Attorney General United States of America*, 69 F.4th 96, 106 (3d Cir. 2023), sitting en banc, the Third Circuit found that a person convicted of the felony of making a false statement under Pennsylvania law retained his Second Amendment right to possess a gun. *See also United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *1 (S.D. Miss. June 28, 2023) (finding 922(g)(1) unconstitutional as applied to an individual previously convicted of manslaughter).

Nonetheless, even in *Range*, the dissenters found the majority did not afford proper weight to "the Supreme Court's consistent admonishment that felon bans are 'longstanding' and 'presumptively lawful.'" *Id.* at 114 (Schwartz, J., dissenting); *see also id.* at 119-20 (Krause, J., dissenting) ("[T]ime and again, the Supreme Court has acknowledged that the deep roots of felon-possession bans in American history impart a presumption of lawfulness to 18 U.S.C. § 922(g)(1) ... *Bruen* observed that historical analogies must be more flexible when a contemporary regulation implicates 'unprecedented social concerns or dramatic technological changes.' Section 922(g)(1) is such a regulation, as the lethality of today's weaponry, the ubiquity of gun violence, the size and anonymity of the population, and the extent of interstate travel were unknown at the Founding.") (internal quotations and alterations omitted)); *id.* at 141 (Roth, J., dissenting) ("The Court did not, in *Bruen*, overrule its decisions upholding Congress's power to regulate the possession of firearms in interstate commerce. These decisions remain good law.") The Court should find the dissenters logic, along with that of the Eighth Circuit, persuasive.

Overall, the weight of evidence suggests *Heller* was not disturbed by *Bruen*, so this Court should continue to follow its command. That is, to continue to treat § 922(g)(1)'s ban on felons possessing firearms as presumptively lawful.

### 3. As Applied to Nailor, § 922(g)(1) is Constitutional

Even though *Heller* remains good law, its dicta is not absolute. "*Heller* only established a presumption that such bans were lawful; it did not invite courts onto an analytical off-ramp to avoid constitutional analysis." *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 686 (6th Cir. 2016). A presumption implies "that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." *Id*. (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)). As applied to Nailor, § 922(g)(1) survives Second Amendment scrutiny for two reasons.

First, since *Bruen* did not disturb *Heller*, Sixth Circuit authority applying *Heller* remains good law. In *United States v. Carey*, the Sixth Circuit held that, under *Heller*, § 922(g)(1) is constitutional because the Second Amendment's reach is "specifically limited in the case of felon prohibitions." *See United States v. Carey*, 602 F.3d 738, 740 (6th Cir. 2010).

In other words, the Sixth Circuit held that a felon's right, or lack thereof, to possess a firearm does not fall under the plain text of the Second Amendment. *See Carey*, 602 F.3d 738, 740. Therefore, even under *Bruen*'s new standard, Nailor's conduct may be regulated, and his challenge fails. *See Bruen*, 142 S. Ct. at 2126-27, 2129-30 (*only* when the regulated activity falls within the text of the Second Amendment must the government prove a regulation is "consistent with the Nation's historical tradition of firearm regulation") (emphasis added).

Again, while the Sixth Circuit has not addressed this issue, the Court finds support for its reasoning in this district. *See e.g., United States v. Smith*, No. 22-cr-20351, 2023 WL 2215779

9

*1 (E.D. Mich. Feb. 24, 2023) (Goldsmith, J.) (holding an as applied challenge to § 922(g)(1) failed because "the plain text of the Second Amendment—informed by the Supreme Court's discussion of the Second Amendment's scope—does not cover [the defendant]"); *United States v. Carter*, No. 22-20477, 2023 WL 3319913 *2 (E.D. Mich. May 9, 2023) (Roberts, J.) (holding that, "[a]s a convicted felon, [defendant] is not a "law-abiding citizen" who can access the privileges of the Second Amendment, and that the Court is bound by *Carey*, "which unambiguously upholds felon-in-possession statutes"); *United States v. Bluer*, No. 22-20557, 2023 WL 3309844 * 6 (E.D. Mich. May 8, 2023) (Michelson, J.) ("*Bruen* is no barrier to a 922(g)(1) prosecution. And in light of this overwhelming unanimity [in the Eastern District of Michigan], the Court sees no reason to conduct an in-depth analysis of this issue").

Additionally, the Eight Circuit used a similar approach to dispatch an as applied challenge to 18 U.S.C. § 922(g)(5). In *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023), a Canadian citizen brought a Second Amendment challenge to 18 U.S.C. § 922(g)(5)'s ban on the possession of guns by unlawful immigrants. *Id*. at 982. The court found 922(g)(5) was constitutional because it was bound by its pre-*Bruen* precedent. *Id*. at 987.

In sum, prior to *Bruen*, the Eighth Circuit decided a case, *Flores*, wherein it held "the protections of the Second Amendment do not extend to aliens illegally present in this country." *Id*. at 983. Then, in *Sitladeen*, the Court denied the Canadian citizen's Second Amendment challenge by relying on *Flores*.

Importantly, the court found *Flores* remained binding, and was undisturbed by *Bruen*, because of the path the court used when deciding *Flores*. In *Sitladeen*, the court explained, "[W]e did not reach our conclusion that § 922(g)(5)(A) is constitutional by engaging in means-end scrutiny or some other interest-balancing exercise. Rather…we reached our conclusion by

10

considering—consistent with what *Bruen* now requires—whether the conduct regulated by § 922(g)(5)(A) was protected by the plain text of the Second Amendment." *Id*. at 985-87 (internal citations omitted).

In other words, the Eight Circuit found *Flores* is still binding because it represents a proper application of the first part of the *Bruen* standard. That is, *Flores* held an illegal immigrant's right to possess a gun fell outside the plain text and history of the Second Amendment. So, even under *Bruen*, regulation of that activity is valid. For the same reason, *Carey* remains binding on this Court and compels the conclusion that § 922(g)(1) is lawful.

Second, *Carey* aside, Nailor's criminal history indicates he is not a candidate to overcome *Heller's* presumption that 922(g)(1) is legal. Nailor's prior felony convictions are as follows: (1) in 2013, he pled nolo contendere to one count of Armed Robbery in violation of Mich. Comp. L. 750.529; (2) in 2022, he pled guilty to one count of Carrying a Concealed Weapon under Mich. Comp. L. 750.224F; and (3) in 2022, he also plead guilty to one count of Felon in Possession of Ammunition under Mich. Comp. L. 750.224F6. (ECF No. 1 ¶ 17).

Based on Nailor's history, specifically the violent offense of Armed Robbery, he falls within the exact category of felons to whom the rationale in *Heller* would apply. *See United States v. Khami*, 362 F. App'x 501, 508 (6th Cir. 2010) (stating that *Heller* would likely foreclose an as applied challenge for a defendant who "was on electronic tether at the time of the search and had two prior drug felony convictions"). Nailor has not provided a compelling reason to find that, as applied to him, § 922(g)(1) is unconstitutional.

## CONCLUSION

For the reasons stated above, **IT IS SO ORDERED** that Nailor's Motion to dismiss is **DENIED**. *Bruen* has no impact on *Carey* or the force of *Heller's* dicta. Under *Carey* and *Heller*,

the Court finds 18 U.S.C. § 922(g)(1) is constitutional, even as applied to Nailor, and does not violate his Second Amendment Rights.

**IT IS SO ORDERED.**

Dated:  September 15, 2023                s/Sean F. Cox
                                          Sean F. Cox
                                          U. S. District Judge

I hereby certify that on September 15, 2023, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                          s/J. McCoy
                                          Case Manager